WELCH, Judge,
dissenting.
The majority has affirmed the circuit court’s revocation of Tavaress M. Johnson’s probation. Because I would reverse, I must respectfully dissent.
*634 In 2005, Tavaress M. Johnson pleaded guilty to first-degree robbery, second-degree kidnapping, and second-degree burglary. He was sentenced to 20 years’ imprisonment for each conviction. Although the record is unclear, apparently Johnson’s sentence was split to serve time in prison followed by a period of probation. In 2011, during the probationary portion of Johnson’s sentence, Johnson was charged with two counts of third-degree domestic violence. On March 24 and 31, the circuit court conducted a probation-revocation hearing. The circuit court revoked Johnson’s probation. This appeal followed.
Officer R.C. Blanchard of the Montgomery Police Department testified at the revocation hearing that on February 23, 2011, she was dispatched to an apartment complex on Woodley Road when tenants reported that someone in an upstairs apartment had been screaming and hollering all day; the tenants believed a male was assaulting a female. When Officer Blanchard arrived, the tenants told her that the male suspect had just run into a field behind the apartments. Officer Blanchard went to the upstairs apartment. The victim, Tempest Johnson, came to the door. One of her eyes was swollen shut and she was crying. Tempest told Officer Blanchard that her boyfriend, Johnson, had beat her all day. Officer Blanchard called for medical assistance, and a rescue unit responded. Medical personnel stated that Tempest might have a concussion. Tempest’s mother had arrived and took Tempest to the doctor. Johnson was found and arrested for domestic violence.
Detective Andrew Magnus of the Montgomery Police Department testified that as part of a robbery investigation, he obtained a list of the telephone calls dialed from the county jail in which the inmate suspect’s personal-identification number (“pin”) was used. Detective Magnus noticed that there were two new telephone numbers listed under the inmate’s pin number. He listened to the two recordings of the conversations placed to the two new telephone numbers. These conversations consisted of an inmate talking to a female about dropping the charges in some domestic-violence dispute. Detective Mag-nus was not able to ascertain their names. Detective Magnus cross-referenced the telephone number to other telephone numbers dialed by inmates from the jail. The records disclosed that Johnson had made several calls to this telephone number. Detective Magnus notified Johnson’s case agent about the telephone calls.
Corporal Tina McCaskill of the Montgomery Police Department testified that she was the case agent assigned to Tempest’s domestic-violence case. She contacted Tempest and scheduled an appointment for Tempest to come see Corporal McCaskill; however, Tempest did not show up for the appointment. Corporal McCaskill telephoned Tempest again and left a message when no one answered. During Corporal McCaskill’s testimony, the State admitted a document regarding conditions of release following Johnson’s arrest. Johnson signed this document in which he agreed not to have any contact with the victim. Corporal McCaskill testified that the telephone number McCaskill had used to telephone Tempest was the same number dialed frequently by Johnson from the county jail and the number dialed by the unidentified inmate who asked the female recipient of the call to drop domestic violence charges against him. Corporal McCaskill testified that Tempest was the victim in only one Montgomery County domestic-violence ease; however, she acknowledged that she did not check to see if Tempest had been the victim of domestic violence in cases in surrounding counties.
*635 Officer Meghan Webster of the Alabama Board of Pardons and Paroles testified that she had been supervising Johnson as his probation officer. Officer Webster testified that Tempest telephoned her and left a voice mail with her name and telephone number. Officer Webster returned Tempest’s call. During the telephone call, Tempest inquired about the status of Johnson’s case. Officer Webster asked Tempest if she was the victim in one of Johnson’s domestic-violence cases, and Tempest stated that she was.[9] Officer Webster told Tempest that she would be required to come to court. Officer Webster gave her the court date. Tempest did not appear for the revocation hearing. Officer Webster testified that the telephone number she used to contact Tempest was the same telephone number the unidentified inmate dialed from the county jail and that, in her opinion, the female’s voice on the recordings of those two calls matched the voice of the person who identified herself as Tempest on the telephone. Officer Webster testified that the female in the telephone calls made from the county jail identified the male as “Conflict,” which, according to Webster, is Johnson’s alias. Officer Webster testified that Johnson’s “career manager” had introduced Johnson to her as “Conflict” and had sent her advertisements for Johnson’s rap music on which Johnson identified himself as “Conflict.” Officer Webster identified Johnson as the male voice in the telephone calls made from the jail asking that the domestic violence charge be dropped. Officer Webster testified regarding the telephone conversations as follows:
“[T]he majority of the conversation was about domestic violence cases and his probation. He was speaking to Tempest and telling her — directing her to go down to the detective division and talk to the detectives and tell them that the charges were bogus.
“He further advised her that she needed to write a letter to this Court, addressed to Your Honor, and tell you that the charges were bogus.
“He further talked about the other victim, his cousin, and that she was going to play dirty and that he was going to get his mother to testify that none of that happened because if his cousin was going to play dirty, then he was going to play dirty.”
(R. 41-42.)
The audio recordings of the telephone conversations were admitted into evidence at the hearing. The circuit court revoked Johnson’s probation, finding probable cause that he had committed the new offense of domestic violence.
Johnson argues on appeal that the circuit court erroneously revoked his probation solely on hearsay indicating that he had committed a new offense.
The main opinion determines that both the jail audio recordings of Johnson and the victim’s “excited utterance” — when she answered the door to the apartment and told Officer Blanchard that Johnson had beaten her — served as “corroborating non-hearsay evidence” supporting other hearsay testimony admitted at the hearing. I disagree with both findings.
First, nowhere in the jail telephone recordings does Johnson admit that he committed the assault constituting domestic violence. He is heard trying to persuade the victim to drop the charges. This behavior is equally consistent with someone who is innocent as it is with someone who is guilty. Thus, I do not believe that the recordings are evidence of Johnson’s guilt. Therefore, I do not believe that they can *636 serve as the “nonhearsay” evidence in support of revocation.
I also disagree that, in Alabama, exceptions to the rule against the admissibility of hearsay have any application in probation-revocation proceedings. Thus, I disagree with the main opinion’s “excited utterance” analysis for the reasons that follow.
In the context of probation revocations, this Court and the Alabama Supreme Court have long held that a trial court needs to be only reasonably satisfied that a probationer has violated a condition of probation; therefore, hearsay is admissible at a probation-revocation hearing. However, hearsay evidence may not form the sole basis for revoking an individual’s probation. Sams v. State, 48 So.3d 665, 668 (Ala.2010); Goodgain v. State, 755 So.2d 591, 592 (Ala.Crim.App.1999); Clayton v. State, 669 So.2d 220, 222 (Ala.Crim.App.1995); Chasteen v. State, 652 So.2d 319, 320 (Ala.Crim.App.1994); and Mallette v. State, 572 So.2d 1316, 1317 (Ala.Crim.App.1990).
The main opinion states that because the victim’s statement was “an exception to the hearsay rule,” it “supported” other hearsay offered at the hearing. Thus, the main opinion appears to find that a hearsay exception destroys the hearsay nature of the evidence. I disagree. An excited utterance constitutes an exception to the exclusion of hearsay. See Rule 803(2), Ala. R. Evid. (inadmissable hearsay testimony is admissible when that hearsay testimony is found, by the trial court, to be an “excited utterance”). In other words, in a criminal trial exceptions exist to allow the trial court to find otherwise inadmissible hearsay evidence to be sufficiently reliable to warrant its admission. See Rule 803, Ala. R. Evid. A determination that hearsay falls within an exception found in Rule 803, Ala. R. Evid., concerns the admissibility of otherwise inadmissible hearsay. However, “ ‘[f]ormal procedures and rules of evidence are not employed in probation revocation hearings.’ ” Williams v. State, 673 So.2d 829, 830 (Ala.Crim.App.1995) (quoting Marquis v. State, 439 So.2d 197, 198-199 (Ala.Crim.App.1983)). In the context of a probation-revocation hearing, “hearsay evidence is admissible at the discretion of the trial judge whether or not it is within one of the recognized [hearsay] exceptions.... ” Grantham v. State, 580 So.2d 53, 57 (Ala.Crim.App.1991). Thus, finding a hearsay exception is unnecessary in an Alabama probation-revocation hearing because, in Alabama, the hearing court may admit hearsay that it finds reliable— whether or not a hearsay exception applies. “The court may receive any reliable, relevant evidence not legally privileged, including hearsay.” Rule 27.6(d)(1), Ala. R.Crim. P. “The court may consider both hearsay and nonhearsay evidence in making its determination. The hearsay evidence, however, must be reliable, and it cannot be the sole evidence supporting the revocation of probation.” Sams, 48 So.3d at 668. For purposes of probation revocation, because Alabama allows the hearing court to admit any hearsay that it finds reliable, there is no distinction between hearsay that fits an exception and hearsay that does not. Thus, in the context of a probation revocation, all hearsay is treated equally. For that reason, probation revocations may not be upheld where hearsay is the sole evidence supporting revocation. Such a scenario violates due process. In Sams, the Alabama Supreme Court stated: “ ‘ “The use of hearsay as the sole means of proving a violation of a condition of probation denies a probationer the right to confront and to cross-examine the persons originating the information that forms the basis of the revocation.” ’ ” 48 So.3d at 668 (quoting Goodgain v. State, 755 So.2d *637 591, 592 (Ala.Crim.App.1999), quoting in turn Clayton v. State, 669 So.2d 220, 222 (Ala.Crim.App.1995)).
Because I believe that Johnson’s probation has been revoked based solely on hearsay, I must respectfully dissent from the majority’s decision to affirm the hearing court’s decision.

. Johnson was also charged with domestic violence for assaulting his cousin.